UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


DEBRA K. MORRISON,

        Plaintiff,

v.                                          CASE NO. 2:10-CV-0156

STANDARD INSURANCE COMPANY,
PUBLIC EMPLOYEE INSURANCE AGENCY, and
FRINGE BENEFITS MANAGEMENT COMPANY,

        Defendants.


MEMORANDUM OPINION AND ORDER


        Pending is plaintiff Debra K. Morrison's motion to

remand, filed March 11, 2010.[1]  Because the court lacks subject

matter jurisdiction, the motion is granted.


        I.  Background and Procedural History


        Plaintiff Debra K. Morrison is a West Virginia citizen.

(Am. Compl. ¶ 1).  Defendant Standard Insurance Company

("Standard Insurance") is an Oregon citizen.  (Notice of Removal

¶ 10).  Defendant Fringe Benefits Management Company ("FBMC") is

_____

        [1]Also pending are the motion of defendant Standard Insurance
Company, joined by defendant Fringe Benefits Management Company,
to dismiss Counts II, III, IV, and V of the complaint, filed
April 7, 2010; defendant Standard Insurance Company's motion to
strike, filed April 30, 2010; and plaintiff's motion for leave to
file a brief in opposition to the surreply of defendant Public
Employee Insurance Agency, filed May 10, 2010.

a Florida citizen.  (Id.).  Defendant Public Employee Insurance
Agency ("PEIA"), an agency of the State of West Virginia, is a
West Virginia citizen.  (Am. Compl. ¶ 3).

        Morrison was formerly employed by the State of West
Virginia.  (Am. Compl. ¶ 1).  While she was an active state
employee, Morrison obtained a Group Long Term Disability
Insurance Policy (the "Group Policy") from PEIA.  (Id. ¶¶ 3, 11).
Defendant Standard Insurance issued the Group Policy.  (Id. ¶
11).  In July of 2006, Morrison retired from her job with the
State, due in part to a medical condition that ultimately
rendered her disabled.  (Id. ¶ 13).  In August of 2006, she filed
a claim for, and received, short-term disability benefits.  (Id.
¶¶ 14-15).

        Thereafter, Morrison filed a claim for long-term
disability benefits.  As she was obliged to do under the Group
Policy, Morrison disclosed certain deductible income, including
the retirement benefits she received pursuant to West Virginia's
retirement pension plan for public employees.  She believed,
however, that the Group Policy permitted Standard Insurance to
deduct only fifty percent of her retirement benefits from her
monthly disability payment.  (Id. ¶ 22).  To support her
interpretation of the Group Policy, Morrison relied on a

                            2

reference guide provided to her by PEIA and allegedly created by defendant FBMC, the Group Policy's administrator. According to Morrison, the reference guide demonstrated that only half of her retirement benefits would be deducted from her monthly disability payment.

Notwithstanding the reference guide, Standard Insurance concluded that one hundred percent of her retirement benefits were to be deducted from her monthly disability payment. Standard Insurance informed Morrison of its decision by letter dated January 26, 2007 (the "Benefits Letter"). (See Standard Insurance's Resp. to Mot. to Remand, Ex. J, at 1). Importantly, however, the Benefits Letter informed Morrison that she could seek further review of her claim for benefits. The Benefits Letter provided as follows:

> Your claim has been limited for the reasons outlined above. If you want us to review your claim and this decision you must send us a written request within 180 days after you receive this letter. If you request a review, you will have the right to submit additional information in connection with your claim. . . .
>
> If you request a review, it will be conducted by an individual who was not involved in the original decision. . . . The review would be completed within 45 days after we receive your request unless circumstances beyond our control require an extension of an additional 45 days.

(Id. at 4). Consistent with these instructions, Morrison

3

requested that Standard Insurance review its decision to deduct one hundred percent, as opposed to fifty percent, of her retirement benefits.  (Am. Compl. ¶ 20).  Standard Insurance completed its administrative review of Morrison's claim on October 2, 2008, again concluding that all of her retirement benefits were to be considered deductible income.  (Id. ¶ 21).

On February 19, 2009, Morrison commenced this action in the Circuit Court of Kanawha County, naming as defendants Standard Insurance; PEIA; and PEIA's director, Ted Cheatham. (Notice of Removal ¶ 1).  On November 20, 2009, she filed an amended complaint, adding FBMC as a defendant.  (Id. ¶ 2). Morrison asserts the following claims in her five-count complaint:  Count I, Breach of Contract; Count II, Unfair Claims Settlement Practices; Count III, Common Law Bad Faith; Count IV, Reasonable Expectations; and Count V, Negligence.

On January 28, 2010, Morrison's counsel signed a stipulation of dismissal agreeing to dismiss Cheatham from the action.  (Id., Ex. D).  Thereafter, the Circuit Court voluntarily dismissed all claims against Cheatham with prejudice.  (Id., Ex. E.).  By letter dated January 28, 2010 (the "Dismissal Letter"), Morrison's counsel also informed the parties that Morrison would agree to dismiss without prejudice all claims against PEIA,

4

provided that PEIA prepare a stipulation of dismissal.  (Id., Ex. D).  Morrison's counsel never signed such a stipulation, however, and PEIA was not dismissed from the suit.

On February 18, 2010, Standard Insurance removed the action with FBMC's consent, invoking diversity jurisdiction as the sole grounds for removal.  (Id. ¶¶ 6,7).  On March 11, 2010, Morrison moved to remand, raising two issues:  (1) whether there is complete diversity among the parties; and (2) whether the amount in controversy exceeds $75,000.  It is only necessary to address the first issue.

With respect to the complete diversity of the parties, Morrison asserts that the presence of PEIA, a West Virginia agency and citizen of West Virginia, destroys complete diversity, inasmuch as she is also a West Virginia citizen.  In response, Standard Insurance raises two contentions.  First, it asserts that removal was proper inasmuch as Morrison agreed in the Dismissal Letter to voluntarily dismiss the claims against PEIA.  Second, it maintains that Morrison fraudulently joined PEIA.  Accordingly, Standard Insurance concludes that this action was properly removed to federal court and that Morrison's motion to remand must therefore be denied.

5

## II.  Governing Standard

For removal from state to federal court to be appropriate, the federal court must possess original jurisdiction.  28 U.S.C. § 1441(a); <u>see also</u> <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to a federal court by the defendant.").  In the instant action, the only possible basis for this court's original jurisdiction is diversity of citizenship, as provided by § 1332(a).  "A case falls within [a] federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the same state."  <u>Wis. Dep't of Corrs. v. Schacht</u>, 524 U.S. 381, 388 (1998).

The party seeking removal bears the burden of establishing federal jurisdiction.  <u>See</u> <u>Mulcahey v. Columbia Organic Chem. Co.</u>, 29 F.3d 148, 151 (4th Cir. 1994).  Because removal jurisdiction implicates significant federalism concerns, it is strictly construed.  <u>See</u> <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100, 108-09 (1941); <u>Mulcahey</u>, 29 F.3d at 151. If federal jurisdiction is doubtful, the case must be remanded.

Palisades Collections LLC v. AT&T Mobility LLC, 552 F.3d 327, 336
(4th Cir. 2008).

### III.  Voluntary Dismissal

        Standard Insurance first asserts that the action was
removable inasmuch as Morrison agreed to the voluntary dismissal
of PEIA, the only non-diverse party to the suit.  (Standard
Insurance's Resp. 4).  It contends that the Dismissal Letter from
Morrison's counsel informing the remaining parties that Morrison
agreed to voluntarily dismiss PEIA was sufficient to create
diversity, thereby triggering the right to remove.  (Id. at 5).
Standard Insurance maintains that it was not obliged to wait for
the state court to enter a final order dismissing PEIA from the
action.  (Id.)

        It is of course well settled that a plaintiff may
create complete diversity by voluntarily dismissing any claims
against the only non-diverse defendant .  See Higgins v. E. I.
DuPont de Nemours & Co., 863 F.2d 1162, 1166 (4th Cir. 1988).
Moreover, several courts have held that a defendant need not wait
until the non-diverse party is formally dismissed from the suit
before removing to federal court.  See, e.g., Chohlis v. Cessna
Aircraft Co., 760 F.2d 901, 903 and n.2 (8th Cir. 1985)

                                7

(observing that settlement between plaintiff and non-diverse defendant "was final enough to support removal," even though that defendant had not been severed from state court suit at time of removal); King v. Kayak Mfg. Corp., 688 F. Supp. 227, 230 (N.D. W. Va. 1988) ("[A] written order is not necessarily a paramount consideration in determining whether a case is ripe for removal."). But see 14B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3723 (3d ed. 2008) ("A party whose presence in the action would destroy diversity must be dropped formally as a matter of record to permit removal to federal court."). Where a non-diverse defendant remains a party at the time of removal, however, the defendant seeking removal is generally required to establish with a reasonable degree of certainty that dismissal of the non-diverse defendant was an inevitability. See King, 688 F. Supp. at 229-30 (concluding that, inasmuch as state trial judge had unequivocally announced dismissal of non-diverse defendant, case was removable even though that defendant had not been formally severed from suit); see also Allison v. Meadows, No. 2:05-cv-00092, 2005 WL 2016815, at *3 (S.D. W. Va. August 22, 2005).

In Allison, for example, a case on which Standard Insurance relies, the plaintiffs agreed to settle with the only

8

non-diverse defendant in the action.  <u>Id.</u> at *1.  By letter, the
plaintiffs' counsel informed the remaining defendant of the
settlement between his clients and the non-diverse defendant,
attaching to the letter unsigned copies of the settlement
agreement.  <u>Id.</u>  The remaining defendant thereafter removed,
contending that the letter and the settlement agreement
unequivocally demonstrated that the non-diverse defendant was no
longer a party to the action, rendering the parties completely
diverse.  <u>Id.</u>  In assessing the removability of the suit, the
court observed that, "for a case to become removable as a
consequence of a settlement between the plaintiff and the only
nondiverse defendant, a defendant must be able to establish with
a reasonable degree of certainty that dismissal of the nondiverse
defendant is an inevitability."  <u>Id.</u> at *3.  The court reasoned
that "[s]ettlement negotiations are fraught with uncertainty and
are often thwarted by a last minute change of heart or a debate
over minutiae at the signing table."  <u>Id.</u>  Accordingly, the court
concluded that an unsigned document accompanied by a letter
indicating an intent to settle "is not a sufficiently certain
indication that the case is one which is or has become
removable."  <u>Id.</u>

        Here, Standard Insurance likewise relies on an

equivocal statement by Morrison's counsel in contending that removal was proper. Emphasizing the Dismissal Letter, Standard Insurance maintains that Morrison agreed to voluntarily dismiss PEIA from the suit, rendering the remaining parties completely diverse. The Dismissal Letter, however, does not demonstrate with the requisite degree of certainty that PEIA's dismissal was an inevitability. That letter, mailed from Morrison's counsel to PEIA's counsel, provides as follows:

> Please find enclosed the Order you drafted concerning the dismissal of Ted Cheatham. I have executed the Order, per your request.
>
> Additionally, if you will prepare one dismissing PEIA, I will, at this time, be willing to sign that Order. However, please draft the one dismissing PEIA as a dismissal without prejudice. Although I do not anticipate bringing [it] back into the action, based upon the failure of FBMC to respond, I do not want to prejudice my client's rights should the relationship [between PEIA and FBMC] be different from my current understanding.

(Standard Insurance's Resp., Ex. C). Although the Dismissal Letter informed the parties that Morrison had agreed to voluntarily dismiss PEIA without prejudice, Morrison's counsel specifically left open the option of asserting a claim against PEIA in the event he learned more of its relationship with defendant FBMC. Inasmuch as nothing in the Dismissal Letter bound Morrison to release PEIA as a party to the action, the letter was not a sufficiently certain indication that PEIA's

10

dismissal was inevitable.  Accordingly, the court concludes that Morrison's agreement to dismiss PEIA did not render the case removable.

## IV.  Fraudulent Joinder

### A.  Governing Standard

Standard Insurance next contends that removal was proper inasmuch as PEIA was fraudulently joined.  The fraudulent joinder standard is well settled.  Our court of appeals lays a "heavy burden" upon a defendant removing a case on such grounds:

> In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: [t]hat there is <u>no possibility</u> that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts.

<u>Mayes v. Rapoport</u>, 198 F.3d 457, 464 (4th Cir. 1999) (emphasis added) (quoting <u>Marshall v. Manville Sales Corp.</u>, 6 F.3d 229, 232 (4th Cir. 1993)).  The applicable standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss[.]"  <u>Hartley v. CSX Transp., Inc.</u>, 187 F.3d 422, 424 (4th Cir. 1999).

As the decision in <u>Hartley</u> illustrates, fraudulent joinder claims are subject to a rather black-and-white analysis

11

in this circuit.  Any shades of gray are resolved in favor of

remand.  Indeed, "the defendant must show that the plaintiff

cannot establish a claim against the nondiverse defendant even

after resolving all issues of fact and law in the plaintiff's

favor."  <u>Mayes</u>, 6 F.3d at 232.  At bottom, a plaintiff need only

demonstrate a "glimmer of hope" in order to have his claims

remanded.  As stated in <u>Hartley</u>:

> CSX contests these points and we are unable to resolve
> them with the snap of a finger at this stage of the
> litigation. Indeed, these are questions of fact that
> are ordinarily left to the state court jury.
>
> <u>In all events, a jurisdictional inquiry is not the
> appropriate stage of litigation to resolve . . .
> various uncertain questions of law and fact</u>. Allowing
> joinder of the public defendants is proper . . .
> because courts should minimize threshold litigation
> over jurisdiction. Jurisdictional rules direct judicial
> traffic. They function to steer litigation to the
> proper forum with a minimum of preliminary fuss. The
> best way to advance this objective is to accept the
> parties [as] joined . . . unless joinder is clearly
> improper.  To permit extensive litigation of the merits
> of a case while determining jurisdiction thwarts the
> purpose of jurisdictional rules.
>
> * * *
>
> <u>We cannot predict with certainty how a state court and
> state jury would resolve the legal issues</u> and weigh the
> factual evidence in this case. <u>Hartley's claims may not
> succeed ultimately, but ultimate success is not
> required . . . . Rather, there need be only a slight
> possibility of a right to relief</u>. Once the court
> identifies this glimmer of hope for the plaintiff, the
> jurisdictional inquiry ends.

<u>Hartley</u>, 187 F.3d at 425-26 (emphasis added).

12

Standard Insurance contends that PEIA was fraudulently joined inasmuch as there is no possibility that Morrison can establish a cause of action against that party.  Standard Insurance's contention is two-fold.  First, it asserts that sovereign immunity precludes any claims against PEIA.  Second, it maintains that the claims against PEIA are barred by the statute of limitations.

B.    Sovereign Immunity

Article VI, Section 35 of the Constitution of West Virginia grants sovereign immunity to the State.  W. Va. Const. art VI, § 35 ("The state of West Virginia shall never be made defendant in any court of law or equity . . . .").  The policy underlying sovereign immunity "is to prevent the diversion of State monies from legislatively appropriated purposes."  Arnold Agency v. W. Va. Lottery Comm'n, 206 W. Va. 583, 590, 526 S.E.2d 814, 821 (1999).  As a result, "where monetary relief is sought against the State treasury for which a proper legislative appropriation has not been made, sovereign immunity raises a bar to suit."  Id.  Inasmuch as a claim against a body charged with conducting the State's business equally seeks recovery against the State treasury, the Supreme Court of Appeals of West Virginia

has consistently ruled that "proceedings against boards and commissions, created by the Legislature, as agencies of the State, are suits against the state within the meaning of Article VI, Section 35." Hamill v. Koontz, 134 W. Va. 439, 443, 59 S.E.2d 879, 882 (1950); see also Arnold Agency v. W. Va. Lottery Comm'n, 206 W. Va. 583, 590-91, 526 S.E.2d 814, 821-22 (1999).

Notwithstanding this broad immunity, "the West Virginia Legislature has recognized that the State should, in certain circumstances, be held liable for damages resulting from acts undertaken, or responsibilities incurred, by its officials, agents and employees." Wrenn v. W. Va. Dep't Transp., 224 W. Va. 424, 427, 686 S.E.2d 75, 78 (2009). Accordingly, the State is required to establish and develop "an adequate, economical and sound state insurance and bonding service on all state property, activities, and responsibilities." W. Va. Code § 29-12-1. Importantly, any insurance policy purchased or contracted for by the State must provide that any claims against the State arising under that policy are exempt from the constitutional immunity otherwise afforded to the State. Id. 29-12-5(a)(4). In other words, "suits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage fall outside the traditional

constitutional bar to suits against the State." Pittsburgh
Elevator Co. v. W. Va. Bd. Regents, 172 W. Va. 743, 756, 310
S.E.2d 675, 688 (1983).

        Notably, in her amended complaint, Morrison asserts
that "the recovery sought against [PEIA] is limited to any
applicable insurance coverage." (Am. Compl. 13). Stated
differently, Morrison seeks damages under and up to the limits of
the State's liability insurance coverage. As the Supreme Court
of Appeals of West Virginia made clear in Pittsburgh Elevator,
such a claim falls outside the traditional bar to suits against
the State. 172 W. Va. at 756, 310 S.E.2d at 688. Inasmuch as
Morrison seeks recovery against the State's liability insurance
coverage, "the doctrine of constitutional immunity, designed to
protect the public purse, is simply inapplicable." Id.
Accordingly, her claims against PEIA are not barred by sovereign
immunity.

        Notwithstanding the inapplicability of sovereign
immunity, Standard Insurance asserts that there is no possibility
Morrison will recover against PEIA inasmuch as the State's
liability insurance coverage excludes claims of the type asserted
in the amended complaint. (Standard Insurance's Resp. 9-12).
Specifically, Standard Insurance maintains that the liability

15

insurance coverage excludes any claims that are based on or attributable to allegations of breach of contract.  (Id. at 11). Inasmuch as each of Morrison's claims is attributable to the defendants' denial of benefits under the Group Policy, Standard Insurance contends that those claims are excluded.

Although Standard Insurance may well be correct in contending that the State's liability insurance coverage excludes claims of the type asserted by Morrison, the court is constrained to conclude that Standard Insurance has failed to satisfy its "heavy burden" in proving fraudulent joinder.  Mayes, 198 F.3d at 463.  Put simply, certain of Morrison's claims are unrelated to the alleged breach of contract, leaving at least "a glimmer of hope" that she may succeed in her claims against PEIA.  Hartley, 187 F.3d at 426.  For example, Morrison's negligence claim stems from the defendants' conduct in failing to provide her with a suitable insurance policy.  Similarly, Count II, which alleges that the defendants contravened the Unfair Claims Settlement Procedures Act, arises from PEIA's alleged misrepresentation of the Group Policy's terms.  Inasmuch as these claims are not attributable to Standard Insurance's decision to limit Morrison's monthly disability payment, it is not immediately apparent whether the State's liability insurance coverage precludes them

16

as well.  To permit extensive inquiry on that issue at this stage of the litigation would thwart the purpose of the jurisdictional rules.  See id. at 425.  Rather, inasmuch as joinder is not clearly improper, the correct approach is to accept PEIA as appropriately joined and resolve the uncertainty in favor of remand.  Id.  Accordingly, the court rejects Standard Insurance's contention that PEIA, protected by sovereign immunity, was fraudulently joined in this action.

C.  Statute of Limitations

        Standard Insurance next contends that Morrison fraudulently joined PEIA inasmuch as the statute of limitations precludes any claims she may have against the agency.  (Standard Insurance's Resp. 13).  It reasons that Morrison knew or should have known of her claims against it when she received the Benefits Letter in January of 2007.  Accordingly, Standard Insurance maintains that the one-year statute of limitations governing Morrison's claims accrued in January of 2007.  Inasmuch as Morrison did not initiate this action until February of 2009, Standard Insurance contends that the statute of limitations plainly bars her claims against PEIA.  It therefore concludes that PEIA was fraudulently joined and that this case was removable.

17

Once again, however, the court must reject Standard Insurance's fraudulent joinder contention.  As explained, the fraudulent joinder standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss and, as a result, particularly burdensome for a defendant.  See Hartley, 187 F.3d at 424.  Inasmuch as a limitations challenge at the motion to dismiss stage is successful only in "relatively rare circumstances," Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007), it follows that a defendant asserting a fraudulent joinder claim predicated on a limitations defense faces a nearly insurmountable challenge.  Put simply, although fraudulent joinder may apply in cases where the statute of limitations has run against a non-diverse defendant, "[i]f the statute of limitations issue is difficult to determine, the doctrine of fraudulent joinder is not appropriate, and the case should be remanded to the state court."  Shaffer v. Nw. Mut. Life Ins. Co., 394 F. Supp. 2d 814, 818 (N.D. W. Va. 2005).

Here, the statute of limitations issue is not sufficiently clear to be resolved at this stage of the litigation.  See Riverside Baptist Church v. Certainteed Corp., 349 F. Supp. 2d 943, 949 (D. Md. 2004) ("Where parties disagree as to when the statute of limitations began to run, the state

18

court should make the appropriate determination."). Although
Morrison was certainly on notice of Standard Insurance's
interpretation of the Group Policy as early as January of 2007
when she received the Benefits Letter, Standard Insurance left
open the possibility of a more favorable decision if Morrison
were to take advantage of an administrative review process.
Morrison did just that and, in the process, delayed a final
ruling on her claim for benefits until October of 2008. Inasmuch
as the Supreme Court of Appeals of West Virginia has recognized a
number of equitable modifications regarding the statute of
limitations, including an estoppel defense where the defendant's
conduct induces the plaintiff to delay bringing suit, <u>see, e.g.</u>,
<u>Indep. Fire Co. No. 1. v. W. Va. Human Rights Comm'n</u>, 180 W. Va.
406, 408, 376 S.E.2d 612, 613 (1988), the court cannot conclude
that, without a doubt, Morrison's claims against PEIA would be
precluded by the statute of limitations. Accordingly, the court
rejects Standard Insurance's fraudulent joinder contention and
grants Morrison's motion to remand.

## V.  Attorney Fees

An order remanding the case may require payment of just
costs and any actual expenses, including attorney fees, incurred
as a result of the removal.  28 U.S.C. § 1447(c).  The district

court has a measure of discretion in determining whether to award fees when it chooses to remand a case.  In re Lowe, 102 F.3d 731, 733 (4th Cir. 1996).  Bad faith is not a prerequisite to obtaining attorney fees under 28 U.S.C. § 1447(c).  Id.

The court declines to award attorney fees to Morrison in this instance.  Standard Insurance's attempt to remove this case to federal court appears to have been objectively reasonable.  Further, it does not appear that Standard Insurance acted in bad faith.  Thus, Morrison's request for attorney fees is denied.

VI.

Based upon the foregoing, it is ORDERED as follows:

1.  Plaintiff's motion to remand be, and it hereby is, granted;

2.  Plaintiff's request for attorney fees be, and it hereby is, denied; and

3.  This action be, and it hereby is, remanded for all further proceedings to the Circuit Court of Kanawha County.

The Clerk is directed to forward copies of this memorandum opinion and order to all counsel of record and a certified copy to the clerk of court for the Circuit Court of Kanawha County.

DATED: September 16, 2010

John T. Copenhaver, Jr.
United States District Judge